## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MODULAR STEEL SYSTEMS, INC.<br>Plaintiff | : No. 4:20-CV-00752-MWB<br>:<br>: Judge Brann |
| v. | :<br>: |
| FAIRFIELD UNIVERSITY,<br>Defendant | :<br>: |

**DEFENDANT FAIRFIELD UNIVERSITY'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6), OR, ALTERNATIVELY, TO DISMISS FOR IMPROPER VENUE PURSUANT TO 28 U.S.C. § 1391(b), OR, TO TRANSFER PURSAUNT TO 28 U.S.C. § 1401(a)**

AND NOW COMES the Defendant, Fairfield University, which, by and through its attorneys, Charles O. Beckley, II, Esquire, Thomas S. Beckley, Esquire, and Beckley & Madden, LLC, of Counsel, submits this Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), or, Alternatively, to Dismiss for Improper Venue Pursuant to 29 U.S.C. § 1391(b), or to Transfer Pursuant to 28 U.S.C. § 1404(a).

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. The Parties

1.  Fairfield University ("Fairfield") is an educational entity formed under the laws of the State of Connecticut with an address of 1073 North

Benson Road, Fairfield, Connecticut 06824. (Compl., ¶4.)[1] Fairfield is a Jesuit university and is fully accredited by the New England Association of Schools and Colleges, which accredits schools and colleges in the six New England States. Fairfield has approximately 5,000 undergraduate and graduate students combined, and consists of five different schools, all of which are located at the campus in Fairfield, Connecticut. Fairfield does not have any branch campuses. (Affidavit of Frassinelli, ¶ 2).[2]

2. Fairfield does not maintain any offices in Pennsylvania, it does not have any employees in Pennsylvania, it does not own, lease or use any real property in Pennsylvania, its bank is not located in Pennsylvania, nor is it or has it ever been registered to do business in Pennsylvania. All of Fairfield's employees that were involved with the project in this case work in Connecticut. (Affidavit of Frassinelli, ¶ 3).

3. The Plaintiff, Modular Steel Systems, Inc. ("MSS") is a corporation formed and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 11 Edwards Drive, Bloomsburg, Pennsylvania 17815. (Comp., ¶ 1.)

---

[1] References to "Compl., ¶ __ " refer to the Complaint filed in this action on May 7, 2020.

[2] References to "Affidavit of Frassinelli, ¶ __") refer to the Affidavit of David Frassinelli who is the Vice-President for Facilities for Fairfield, which is being filed concurrently with this Motion.

## B.    The Project

4. On July 10, 2018, Fairfield entered into a written contract with Consigli Construction ("Consigli") for Consigli to serve as a construction manager on a townhouse-style junior housing project ("Project") located entirely on Fairfield's campus in Connecticut. (Affidavit of Frassinelli, ¶ 5).

5. Consigli entered into a subcontract agreement with Five Star Commercial Builders, Inc. ("Five Star") dated October 1, 2018, in which Five Star agreed to provide modular units to be incorporated into the Project. (Compl., ¶ 7.) Fairfield did not have a contract with Five Star. (Affidavit of Frassinelli, ¶ 6).

6. On or about December 5, 2018, Five Star entered into a sub-subcontract with MSS in which MSS agreed to "create, engineer and formulate plans specifically approved by Fairfield's architect for the construction of 96 modular units for a project known as: 'Fairfield University Townhouse Style Junior Housing' for a new student housing project to be located in Fairfield, Connecticut." (Compl., ¶ 7.) Fairfield did not have, nor has it ever had, a contract with MSS. (Affidavit of Frassinelli, ¶ 7).

7. Fairfield made all payments related to the Project directly to Consigli as required by its contract with Consigli. Upon information and

belief, Consigli then made whatever payments were due to Five Star under the subcontract, and, upon information and belief, Five Star then made any payments due under the sub-subcontract to MSS. (Affidavit of Frassinelli, ¶ 8).

8.   Fairfield did not make any payments directly to Five Star or to MSS, nor did it have any obligation to do so because its only contract was with Consigli. (Affidavit of Frassinelli, ¶ 8).

9.   On May 7, 2020, MSS filed its Complaint in this action against Fairfield seeking payment in the amount of $705,039.55, which represents two change orders MSS entered into with Five Star and presented to Five Star for payment totaling $542,684.00, and retainage Five Star withheld from MSS in the amount of $192,355.55.   True and correct copies of the invoices MSS submitted to Five Star for which it is now seeking payment from Fairfield are attached to the Affidavit of David Frassinelli as Exhibit D.[3]

10.   MSS submitted invoices for the two change orders directly to Five Star on May 17, 2019.  (Compl., ¶10.)  MSS's Complaint does not contain any allegations:  (a) that MSS sought approval of the change orders

_____

[3] In its Complaint, MSS stated that the change orders were attached to its Complaint as Exhibits 2 and 3.  (Compl., ¶ 10.)  There do not appear to be any exhibits attached to MSS's Complaint.

from Fairfield itself; (b) that MSS submitted invoices for the change orders directly to Fairfield during the course of the Project; or (c) that MSS submitted any invoices for the retainage to Fairfield.   Indeed, in MSS's counsel's letter to Five Star dated July 18, 2019, in which he demanded payment from Five Star, counsel stated:  "All of the work provided was at your specific instance and request at prices and quantities you agreed to and approved."   (Affidavit of David Frassinelli, Exhibit E.)   MSS is now attempting to allege that it had a contract with Fairfield despite its letter to Five Star.

11.   In its Complaint against Fairfield filed on May 7, 2020, MSS alleged a count against Fairfield for breach of contract and a second count for unjust enrichment.  Upon information and belief, MSS has not sued Five Star, the party with whom MSS actually contracted, it has not filed an action against Consigli, nor has it filed a mechanic's lien action in Connecticut.

12.   MSS alleges that this Court has personal jurisdiction over Fairfield because Fairfield allegedly "availed itself of doing business with a Pennsylvania corporation, in Pennsylvania, and regularly and continuously solicits business by directing mail, email, and internet solicitations to residents of the Commonwealth of Pennsylvania." (Compl., ¶ 4.) MSS did not allege what type of solicitations Fairfield sends to Pennsylvania.

## I. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION - Fed.R.C.P. 12(b)(2)

13.  Federal Rule of Civil Procedure 12(b)(2) allows a party to file a motion to dismiss a complaint for lack of personal jurisdiction.  F.R.C.P. 12(b)(2).

14.  "Where a defendant challenges a court's personal jurisdiction, the plaintiff bears the burden 'to come forward with sufficient facts to establish that jurisdiction is proper.'"  *Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, 948 F.3d 124, 129 (3d Cir. 2020), *quoting*, *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farion*, 960 F.2d 1217, 1223 (3d Cir. 1992).

15.  "To exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry. First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution."  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 284-259 (3d Cir. 1998).

16.  In Pennsylvania, a court may exercise personal jurisdiction over a non-resident defendant "to the fullest extent allowed under the Constitution of the United States," and such jurisdiction "may be based on the most minimum contact with this Commonwealth allowed under the Constitution

of the United States," provided, however, that "only a cause of action or other matter arising…from the acts forming the basis of jurisdiction…may be asserted" against the nonresident defendant. 42 Pa.C.S.A. §§ 5322(b) and (c). In short, "[i]n Pennsylvania, state law provides for jurisdiction 'to the fullest extent allowed under the Constitution of the United States….'" *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting 42 Pa.C.S.A. § 5322(b)).

17.    Under the United States Constitution, a court may exercise personal jurisdiction over an out-of-state defendant only if the defendant has "certain minimum contacts with the state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014), *quoting*, *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

18.    "There are two types of personal jurisdiction, general jurisdiction and specific jurisdiction." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

<u>This Court Lacks General Jurisdiction over Fairfield</u>

19.    In order to establish general jurisdiction over a defendant, the defendant's actions must be so "continuous and systematic as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations,*

7

*S.A. v. Brown*, 564 U.S. 915, 919 (2011), *citing*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).  The United States Supreme Court has stated that "general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Daimler AG v. Bauman*, 571 U.S. 117 (2014).

20.   In the present case, MSS alleged that Fairfield "regularly and continuously solicits business by directing mail, email, and internet solicitations to residents of the Commonwealth of Pennsylvania." (Compl., ¶ 4.)

21.   The majority of Fairfield's students are residents of New York State and various states in New England.  Fairfield's only contact with Pennsylvania is that it may, on occasion, solicit potential students residing in Pennsylvania to apply and enroll in Fairfield, and for donations.  Fairfield's solicitations consist mainly of mail, email, and advertisements in print and online media which reach students in multiple states, attending area high schools to solicit students, or meeting with potential donors.  All of these activities are unrelated to the project at issue.  (Affidavit of Frassinelli, ¶ 4).

22.   Several courts have held that "activities typical for a national university, such as recruiting forum state students, faculty, and athletes, receiving donations and tuition dollars from forum state residents, and

having students, faculty, staff and administrators participate in conferences in the forum state, should not alone subject an institution to general jurisdiction in the forum state of Pennsylvania." *Isaacs v. Trustees of Dartmouth College*, 2014 WL 4186536 (E.D. Pa. 2014); *see also Gehling v. St. George's School of Medicine, Ltd*, 773 F.2d 539 (3d 1985) (court held medical school in Grenada was not subject to personal jurisdiction in Pennsylvania even though school solicited prospective students in Pennsylvania, six percent of the students that attended the school were from Pennsylvania, and it had a relationship with a Pennsylvania college).

23.    Fairfield's contact with Pennsylvania consists of soliciting students and donors through the use of mail, email, advertisements and in-person visits.  Fairfield does not maintain an office in Pennsylvania, it does not have any employees in Pennsylvania, it does not own or lease real property in Pennsylvania, it does not bank in Pennsylvania, and its only campus is located in Connecticut.  (Affidavit of Frassinelli, ¶ 3).

24.    Fairfield lacks the "systematic and continuous contacts" with Pennsylvania to render itself "at home" in Pennsylvania, therefore, this Court lacks general jurisdiction over Fairfield. See *Daimler AG v. Bauman, supra*.

<u>This Court Lacks Specific Jurisdiction over Fairfield</u>

25.    "Specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably anticipate being haled into court' in that forum." *Gorton v. Air & Liquid Systems Corporation*, 303 F. Supp. 3d 278, 292 (M.D. Pa. 2018), (quoting *Verotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 151 (3d Cir. 1996)).

26.    As the Third Circuit has summarized:

> The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have 'purposefully directed [its] activities' at the forum. Second, the litigation must 'arise out of or relate to' at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with "fair play and substantial justice."'

*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations and quotations omitted). *See also Gorton*, 303 F. Supp. 3d at 292 (same).

27.    "[W]ith respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of

their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S.Ct. 2174, 2182 (1985) (emphasis added), (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929 (1950). "In contract disputes, solicitation and formation of the contract itself are not dispositive. Rather, the court must look to the totality of the circumstances." *Shafik v. Curran*, 2010 WL 2510194, * 4 (M.D. Pa. 2010) (Kane, J.)

28. "In determining jurisdiction over a breach of contract case, [the court] must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001). *See also Quantum Communications Ltd. v. Eagle Forum*, 2018 WL 3756694, * 5 (M.D. Pa. 2018) (Kane, J.) (same); *Shafik*, 2010 WL 2510194 at * 4. ("Specific factors to consider in determining personal jurisdiction over a breach of contract claim are: the location and character of the contract negotiations, whether the nonresident solicited business from the forum state, whether the nonresident invoked and received benefits under the laws of the forum state, the contemplated future consequences of the contract, the terms and provisions of the contract, and the parties' course of dealing.")

29.   In the present case, Fairfield never had a contract with MSS, nor, for that matter, did it ever have a contract with MSS.  To the contrary, MSS specifically averred that its contract was with Five Star.  (Compl., ¶ 7.) Indeed, MSS specifically states that Five Star solicited MSS.  (*Id.*) Furthermore, MSS submitted the disputed change order invoices to Five Star, not to Fairfield, as evidenced by the invoices themselves.  (Compl., ¶ 10.)  Finally, there is no evidence that MSS ever submitted any invoices to Fairfield for the retainage.

30.   The only allegation against Fairfield is that MSS dealt with Fairfield's representatives (namely its architect) to prepare the design for the modular units, and Fairfield ultimately used MSS's drawings to obtain the required governmental approvals from the Town of Fairfield, Connecticut. (Compl., ¶ 8.)  Fairfield, however, never solicited MSS, Five Star did, and Fairfield never entered into a contract with MSS.  To the contrary, while MSS may have had discussions with Fairfield's architect about design of the modular units (which MSS was required to design), MSS, by its own admission, contracted with Five Star and submitted its invoices for payment to Five Star.  (Compl., ¶¶ 7, 10).  At no point during the course of the Project did MSS ever request payment from Fairfield.  (Affidavit of Frassinelli, at ¶ 5-8).

31.  Given that Fairfield did not solicit MSS's services (Five Star solicited and contracted with MSS), and MSS sought payment from Five Star, Fairfield had no reason to believe it would be sued in Pennsylvania by a party with whom it did not contract for a project on its campus in Connecticut.  Consequently, it would not comport with fair play and substantial justice to require Fairfield to defend a lawsuit in Pennsylvania which relates entirely to a project located in Connecticut.  Therefore, this Court lacks specific jurisdiction over Fairfield, and the Complaint should be dismissed.

WHEREFORE, Defendant, Fairfield University, respectfully requests the Court to enter an order dismissing Plaintiff's Complaint for lack of personal jurisdiction.

## II.  MOTION TO DISMISS COUNT I OF MSS'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

32.  Federal Rule of Civil Procedure 12(b)(6) allows a party to file a motion to dismiss a complaint for failure to state a claim upon which relief may be granted.  F.R.C.P. 12(b)(6).  In the present case, MSS has asserted claims against Fairfield for breach of contract and unjust enrichment.

33.  "Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a

contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages'." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003), *quoting*, *Corestate Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super. 1999).  In order for one party to maintain a breach of contract against another party, there must be privity between them.  *Illinois Union Ins. Co. v. Hydro Intern., PLC*, 929 F.Supp. 2d 365 (M.D. Pa. 2013).

34.    "The relevant test under Pennsylvania law 'for [the] enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced'."  *EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253, 263 (3d Cir. 2010), *quoting*, *Channel Homes Ctrs., v. Grossman*, 795 F.3d 291, 298-299 (3d Cir. 1986).  "It is well established in Pennsylvania that '[i]n ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter'."  *Id.*, *quoting*, *Espenshade v. Espenshade*, 729 A.2d 1239, 1243 (Pa.Super. 1999). Furthermore, the terms have to be sufficiently definite to enforce them.  *Id.*

35.  In the present case, MSS specifically alleged that it was "solicited by a subcontractor (Five Star) of Fairfield's general contractor, Consigli…" (Compl., ¶ 7.)

36. Furthermore, MSS submitted the change orders and invoices upon which its action is based directly to Five Star for payment. (Compl., ¶ 10). MSS did not submit the change order to Fairfield until January, 2020, months after it had tried to collect payment from Five Star (Affidavit of Frassinelli, ¶ 7), and MSS's counsel stated in his July 18, 2019, letter to Five Star, that MSS's contract was with Five Star. (Affidavit of Frassinelli, Exhibit E.)

37. It is clear that MSS knew and believed that its contract was with Five Star because of the allegations in its Complaint and the change orders it submitted to Five Star. MSS's outward and objective manifestations were that it had a contract with Five Star, not with Fairfield.

38. MSS's only allegation to establish a contract with Fairfield is that the architect essentially provided feedback to MSS on MSS's proposed design. (Compl., ¶ 7). By its own admission, however, in its contract with Five Star, MSS had to produce plans "specifically approved by Fairfield's architect..." (*Id.*) Therefore, while Fairfield's architect may have provided guidance to MSS, MSS was merely complying with its contract with Five Star when it followed the architect's direction. There is no allegation that the architect ever intended to enter into a contract with MSS, or that it had any authority to bind Fairfield to a contract with MSS. To the contrary, the

allegations MSS makes in its Complaint as well as the written change orders which it is now seeking to recover from Fairfield demonstrate that there was no privity of contract between MSS and Fairfield, nor was there ever an intent between the parties to enter into a contract.

39. Therefore, Count I of MSS's Complaint should be dismissed for failure to state a claim upon which relief can be granted.

WHEREFORE, Defendant, Fairfield University respectfully requests the Court to enter an Order dismissing Count I of Plaintiff's Complaint for failure to state a claim upon which relief may be granted

### III. MOTION TO DISMISS COUNT II OF MSS'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

40. In its second count, MSS attempted to state a claim for unjust enrichment. (Compl., ¶¶ 19-25.)

41. "Under Pennsylvania law for quasi-contracts, a claim of unjust enrichment must allege the following elements: (1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit." *Global Ground Support, LLC v. Glazer Enterprises, Inc.*, 581 F.Supp. 669 (E.D. Pa. 2008).

In order to "sustain a claim for unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain." *Torchia v. Torchia*, 499 A.2d 581, 582 (Pa.Super. 1985).

42. "It is well-settled in Pennsylvania that the existence of a contract prevents a party from bringing a claim for unjust enrichment..." *Vantage Learning (USA), LLC v. Edgenuity, Incorporated*, 246 F.3d 1097, 1110 (E.D. Pa. 2017).

43. In the present case, Fairfield has a contract with Consigli which requires Fairfield to pay Consigli for the Project. (Compl., ¶ 1). While Fairfield received the modular units MSS manufactured, Fairfield had a contractual duty to pay Consigli for them, and it paid Consigli in full. Therefore, Fairfield has not been enriched unjustly.

44. Furthermore, MSS has a contract with Five Star. Its remedy in this action is to pursue Five Star for payment. Permitting Five Star to pursue Fairfield would risk Fairfield paying twice for the units, and could result in a double recovery to MSS.

45. Therefore, because Count II of MSS's Complaint for unjust enrichment fails to state a claim upon which relief may be granted, Count II should be dismissed.

WHEREFORE, Defendant, Fairfield University respectfully requests the Court to enter an Order dismissing Count II of Plaintiff's Complaint for failure to state a claim upon which relief may be granted.

## IV.  IN THE ALTERNATIVE – FAIRFIELD'S MOTION TO DISMISS FOR IMPROPER VENUE 28 U.S.C. § 1391(b)

46.  Section 1391(b) of the Judicial Code provides as follows:

A civil action may be brought in—

**(1)** a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

**(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

**(3)** if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

47.  Pennsylvania does not meet any of the tests enumerated in section 1391.

48.  Fairfield is a resident of Connecticut, the Project occurred in Connecticut, MSS mailed its invoices to Fairfield in Connecticut (after Five

18

Star failed to pay MSS), and the modular units which MSS manufactured are now located in Connecticut.

49.    Therefore, venue is improper in Pennsylvania under section 1391(b) and the Court should dismiss MSS's Complaint.

WHEREFORE, Defendant, Fairfield University respectfully requests the Court to enter an Order dismissing Plaintiff's Complaint for improper venue.

## V.  IN THE ALTERNATIVE – FAIRFIELD'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

50.  Section 1404(a) of the Judicial Code provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

51. In deciding whether to transfer a case to another district, a court looks at both private and public factors. *In re Howmedica Osteonics Corp.*, 867 F.3d 390 (3d Cir. 2017).

52.  "The private interests have included: plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses—

but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted).

53.    "The public interests have included: the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879-880.

54.    In the present case, the following private factors weigh in favor of transferring the case to the United State District Court for the District of Connecticut:

> (a)  The Project was located entirely in Connecticut;

> (b)  To the extent MSS has any claims against Fairfield (which it does not), those claims arose in Connecticut where the Project is located;

(c)    Fairfield's and Consigli's witnesses are located in Connecticut, and it is not clear whether any witnesses could be compelled to come to Pennsylvania to testify (Fairfield is over 100 miles from Scranton);

(d)   All of Fairfield's records are located in Connecticut, and MSS knew its products were being manufactured for a project in Connecticut;

(e)   If a view of the Project becomes necessary, it can only be done in Connecticut.

55.    Similarly, the following public factors weigh in favor of transferring the case to the United States District Court for the District of Connecticut:

(a)    Any judgment against Fairfield would have to be transferred to Connecticut to enforce it because Fairfield has no property, personal or real, located in Pennsylvania;

(b)   Connecticut has a greater interest in this matter because the Project is located entirely in Connecticut and involves real property located in Connecticut;

(c)   Connecticut law will most likely govern the dispute given that the Project was located entirely in Connecticut.   While a judge in

Pennsylvania could certainly apply Connecticut law, a judge in Connecticut would be more familiar with it. Furthermore, the time between commencing a civil action and trial in Connecticut is 34.5 months whereas in this Court is 37.2 months (see Exhibit A attached hereto);

56. Given that the private and public factors both weigh in favor of transferring the case to Connecticut, if this Court decides not to dismiss the case based upon a lack of personal jurisdiction or for failure to state a claim upon which relief may be granted, this Court should transfer the case to Connecticut.

WHEREFORE, if the Court declines to dismiss the Complaint outright, Defendant, Fairfield University respectfully requests the Court to enter an Order transferring this case to the United State District Court for the District of Connecticut.

DATED: July 6, 2020                          Respectfully submitted,

     Of Counsel

BECKLEY & MADDEN, LLC            /s/*Charles O. Beckley, II*
212 North Third Street, Suite 301     Charles O. Beckley, II, Esquire
Harrisburg, PA 17101                       Attorney I.D. #47546
(717) 233-7691

                                                  /s/*Thomas S. Beckley*
                                                  Thomas S. Beckley, Esquire
                                                  Attorney I.D. #77040

                                                  Attorneys for Defendant,
                                                  Fairfield University

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MODULAR STEEL SYSTEMS, INC.            : No. 4:20-CV-00752-MWB
       Plaintiff            :
                      : Judge Brann
   v.            :
                      :
FAIRFIELD UNIVERSITY,            :
       Defendant            :

## CERTIFICATE OF NONCONCURRENCE

Pursuant to Local Rule 7.1, I, Thomas S. Beckley, hereby verify I sought Plaintiff's counsel's concurrence to Defendant Fairfield University's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), or, Alternatively, to Dismiss for Improper Venue Pursuant to 29 U.S.C. § 1391(b), or to Transfer Pursuant to 28 U.S.C. § 1404(a), by emailing him on July 2, 2020. Plaintiffs' counsel does not concur in the Motion.

DATED:  July 6, 2020

BECKLEY & MADDEN            /s/*Thomas S. Beckley, Esquire*
212 North Third Street            Thomas S. Beckley, Esquire
Post Office Box 11998            Attorney I.D. #77040
Harrisburg, PA 17108-1998
(717) 233-7691            Attorney for Defendant,
                                Fairfield University

# EXHIBIT A

## U.S. District Court — Judicial Caseload Profile

**PENNSYLVANIA MIDDLE**

| | | | 12-Month Periods Ending | | | | | | Numerical Standing Within | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Mar 31 2015 | Mar 31 2016 | Mar 31 2017 | Mar 31 2018 | Mar 31 2019 | Mar 31 2020 | U.S. | Circuit |
| **Overall Caseload Statistics** | Filings [1] | | 3,167 | 3,094 | 3,235 | 3,251 | 3,035 | 2,817 | | |
| | Terminations | | 3,371 | 2,909 | 2,865 | 3,111 | 3,031 | 3,090 | | |
| | Pending | | 3,310 | 3,471 | 3,840 | 3,980 | 3,987 | 3,708 | | |
| | Percent Change in Total Filings Current Year Over Earlier Year | | -11.1 | -9.0 | -12.9 | -13.3 | -7.2 | | 79 | 5 |
| | Number of Judgeships | | 6 | 6 | 6 | 6 | 6 | 6 | | |
| | Vacant Judgeship Months [2] | | 0.0 | 0.0 | 0.0 | 0.0 | 5.6 | 7.2 | | |
| **Actions per Judgeship** | Filings | Total | 528 | 516 | 539 | 542 | 506 | 470 | 53 | 3 |
| | | Civil | 433 | 419 | 443 | 434 | 396 | 386 | 32 | 3 |
| | | Criminal Felony | 75 | 83 | 82 | 88 | 88 | 69 | 65 | 1 |
| | | Supervised Release Hearings | 19 | 14 | 15 | 20 | 21 | 15 | 79 | 2 |
| | Pending Cases [2] | | 552 | 579 | 640 | 663 | 665 | 618 | 26 | 4 |
| | Weighted Filings [2] | | 468 | 471 | 475 | 474 | 452 | 417 | 50 | 3 |
| | Terminations | | 562 | 485 | 478 | 519 | 505 | 515 | 39 | 3 |
| | Trials Completed | | 22 | 20 | 25 | 28 | 25 | 19 | 35 | 4 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 11.6 | 12.5 | 13.1 | 14.5 | 14.5 | 16.8 | 90 | 6 |
| | | Civil [2] | 9.8 | 8.9 | 9.9 | 9.9 | 9.8 | 11.3 | 78 | 5 |
| | From Filing to Trial [2] (Civil Only) | | 25.5 | 33.6 | 34.4 | 34.8 | 34.9 | 37.2 | 50 | 4 |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [2] | | 189 7.4 | 219 8.4 | 242 8.6 | 218 7.5 | 239 8.3 | 271 10.1 | 57 | 3 |
| | Average Number of Felony Defendants Filed per Case | | 1.5 | 1.6 | 1.4 | 1.3 | 1.3 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 31.1 | 47.9 | 50.8 | 52.0 | 51.9 | 48.8 | | |
| | | Percent Not Selected or Challenged | 28.9 | 38.9 | 50.8 | 33.5 | 39.6 | 38.5 | | |

| 2020 Civil Case and Criminal Felony Defendant Filings by Nature of Suit and Offense | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | Total | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 2,315 | 206 | 64 | 810 | 6 | 40 | 101 | 170 | 200 | 32 | 499 | 7 | 180 |
| Criminal [1] | 411 | - | 141 | 85 | 42 | 56 | 20 | 22 | 7 | 5 | 4 | 13 | 16 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings by "Nature of Offense" do not.

[2] See "Explanation of Selected Terms."

## U.S. District Court — Judicial Caseload Profile

**CONNECTICUT**

| | | | Mar 31 2015 | Mar 31 2016 | Mar 31 2017 | Mar 31 2018 | Mar 31 2019 | Mar 31 2020 | | U.S. | Circuit |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | **Numerical Standing Within** | | |
| **Overall Caseload Statistics** | | Filings [1] | 2,565 | 2,599 | 2,795 | 2,844 | 2,900 | 2,696 | | | |
| | | Terminations | 2,560 | 2,579 | 2,718 | 2,884 | 2,892 | 2,896 | | | |
| | | Pending | 2,964 | 2,975 | 3,056 | 3,015 | 3,010 | 2,812 | | | |
| | | Percent Change in Total Filings Current Year Over Earlier Year | 5.1 | 3.7 | -3.5 | -5.2 | -7.0 | | | 78 | 6 |
| | | Number of Judgeships | 8 | 8 | 8 | 8 | 8 | 8 | | | |
| | | Vacant Judgeship Months [2] | 4.7 | 12.0 | 2.9 | 12.0 | 12.2 | 12.0 | | | |
| **Actions per Judgeship** | **Filings** | Total | 321 | 325 | 349 | 356 | 363 | 337 | | 78 | 5 |
| | | Civil | 267 | 255 | 282 | 284 | 271 | 258 | | 64 | 5 |
| | | Criminal Felony | 35 | 47 | 44 | 48 | 68 | 51 | | 82 | 5 |
| | | Supervised Release Hearings | 19 | 23 | 23 | 23 | 24 | 28 | | 58 | 5 |
| | Pending Cases [2] | | 371 | 372 | 382 | 377 | 376 | 352 | | 73 | 5 |
| | Weighted Filings [2] | | 302 | 309 | 328 | 343 | 366 | 326 | | 75 | 5 |
| | Terminations | | 320 | 322 | 340 | 361 | 362 | 362 | | 75 | 5 |
| | Trials Completed | | 15 | 15 | 15 | 14 | 12 | 11 | | 69 | 5 |
| **Median Time (Months)** | From Filing to Disposition | Criminal Felony | 15.2 | 16.8 | 14.8 | 12.9 | 12.1 | 13.0 | | 76 | 4 |
| | | Civil [2] | 10.4 | 9.8 | 10.4 | 10.2 | 9.5 | 8.9 | | 41 | 4 |
| | From Filing to Trial [2] (Civil Only) | | 42.8 | 39.5 | 36.2 | 36.9 | 34.5 | 34.5 | | 45 | 2 |
| **Other** | Number (and %) of Civil Cases Over 3 Years Old [2] | | 205 | 167 | 142 | 135 | 104 | 100 | | 31 | 1 |
| | | | 8.5 | 7.0 | 5.7 | 5.6 | 4.7 | 4.9 | | | |
| | Average Number of Felony Defendants Filed per Case | | 1.4 | 1.7 | 1.6 | 1.5 | 1.7 | 1.5 | | | |
| | Jurors | Avg. Present for Jury Selection | 60.0 | 55.6 | 55.4 | 57.2 | 75.4 | 62.2 | | | |
| | | Percent Not Selected or Challenged | 10.8 | 22.3 | 19.8 | 13.5 | 27.4 | 11.6 | | | |

### 2020 Civil Case and Criminal Felony Defendant Filings by Nature of Suit and Offense

| Type of | Total | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | 2,066 | 188 | 86 | 412 | 28 | 17 | 123 | 221 | 200 | 101 | 440 | 6 | 244 |
| Criminal [1] | 403 | 2 | 211 | 9 | 78 | 49 | 7 | 15 | - | 6 | 10 | 6 | 10 |

NOTE: Criminal data in this profile count defendants rather than cases and therefore will not match previously published numbers.

[1] Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings by "Nature of Offense" do not.

[2] See "Explanation of Selected Terms."

## **CERTIFICATE OF SERVICE**

I, Thomas S. Beckley, hereby certify that on this day a true and correct copy of the foregoing document was served electronically upon the person indicated below using the Court's CM/ECF system:

<u>Attorney for Plaintiff</u>

Michael R. Mey, Esquire
Mey & Sulla, L.L.P.
1144 East Drinker Street
Dunmore, PA 18512
<u>mmey@meysullalaw.com</u>

DATED:  July 6, 2020                     /s/Thomas S. Beckley