**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MODULAR STEEL SYSTEMS, INC., | No. 4:20-CV-00752 |
| Plaintiff, | (Judge Brann) |
| v. | |
| FAIRFIELD UNIVERSITY, | |
| Defendant. | |

**MEMORANDUM OPINION**

**SEPTEMBER 24, 2020**

## I.    BACKGROUND

On May 7, 2020, Plaintiff, Modular Steel Systems, Inc. (hereinafter "Modular Steel"), filed a two-count complaint against Defendant, Fairfield University (hereinafter "Fairfield").  The complaint alleges breach of contract and unjust enrichment for failure to pay the value of two change orders and failure to pay retainage owed to Modular Steel.  It is predicated on this Court's diversity jurisdiction and brought under Pennsylvania law.

On July 6, 2020, Defendant filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of *in personam* jurisdiction and (12)(b)(6) for failure to state a claim.  In the alternative, Defendant has moved to dismiss Plaintiff's claims for improper venue under 29 U.S.C. § 1391(b) or to transfer pursuant to 28 U.S.C. § 1404(a) to the District of Connecticut.

The motion is now ripe for disposition; for the reasons that follow, it is granted in part and denied in part.  Plaintiff's complaint will be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of *in personam* jurisdiction and 12(b)(6) for failure to state a claim.  However, Plaintiff's motion to transfer this action is denied.[1]

## II.   FACTS

### A.   The Parties

Plaintiff, Modular Steel, is a corporation organized under the laws of and with its principal place of business in the Commonwealth of Pennsylvania.[2] Defendant, Fairfield, is an educational entity formed under the laws of and located in the State of Connecticut.[3]  Fairfield is entirely located in Fairfield, Connecticut, and it does not have any branch campuses.[4]  It does not maintain any offices in Pennsylvania, have any employees in Pennsylvania, or own, lease, or use any real property in Pennsylvania.[5]  It also does not maintain its bank account in Pennsylvania and it has never been registered to do business there.[6]  Fairfield does, however, occasionally solicit prospective students who reside in Pennsylvania.[7]

---

[1]   Given the lack of facts included in the present complaint, the Court declines to transfer this action to the District of Connecticut without reviewing the merits of Defendant's 12(b)(6) motion.  Plaintiff's claims will not be dismissed with prejudice, however, and Plaintiff will be free to refile in the District of Connecticut if it so chooses.

[2]   Doc. 1 at ¶ 2.

[3]   Doc. 6 at ¶ 1.

[4]   *Id.*

[5]   *Id.* at ¶ 2.

[6]   *Id.*

[7]   Doc. 11 at 10-11.

### B.     Fairfield's Housing Project

In July 2018, Fairfield entered into a contract with Consigli Construction (hereinafter "Consigli") to manage the construction of a new student-housing project on Fairfield's campus in Connecticut.[8]  On October 1, 2018, Consigli entered into a subcontract agreement with Five Star Commercial Builders, Inc. (hereinafter "Five Star") to create modular units for the housing project.[9]  In December 2018, Five Star entered into a subcontract agreement with Modular Steel to provide ninety-six modular units for the housing project.[10]  At no point did Fairfield enter into a contract directly with Five Star.[11]

Under Modular Steel's contract with Five Star, Modular Steel agreed to "create, engineer and formulate plans" for these ninety-six modular units.[12] According to the complaint, these plans were to be "specifically approved by Fairfield's architect."[13]  Fairfield hired EYP, Inc. (hereinafter "EYP") to serve as the project's architect.[14]  EYP is a New York corporation not affiliated with Fairfield.[15]  Fairfield contends that it never gave EYP authority to enter into a contract on Fairfield's behalf.[16]

---

[8]   Doc. 6 at ¶ 4.
[9]   *Id.* at ¶ 5.
[10]  *Id.* at ¶ 6.
[11]  Doc. 6-1 at ¶¶ 8-9.
[12]  Doc. 1 at ¶ 7.
[13]  *Id.*
[14]  Doc. 6-1 at ¶ 10.
[15]  *Id.*
[16]  *Id.*

Modular Steel's signed contract with Five Star, submitted by Fairfield with its motion to dismiss, explicitly provides for procedures necessary to effect alterations in the contract's obligations.[17]  It requires that all modifications to the contract (absent an emergency) be made by formal change order and that all change orders be "in writing and agreed to by both parties in a signed document."[18] The contract does not explicitly reference Fairfield or its student-housing project, and it does not include any terms regarding supervision by "Fairfield's architect."

Modular Steel alleges that, prior to production, someone related to Fairfield (either EYP or someone affiliated with Fairfield)[19] reviewed and approved Modular Steel's plans for the ninety-six units.[20]  Plans were then drafted by Modular Steel and used by Fairfield to receive approvals and permits from the City of Fairfield.[21]

Further, Modular Steel claims that EYP directed Modular Steel to make three changes to its drawings, which Modular Steel made in exclusive reliance upon EYP's authority as "Fairfield's designated representative."[22]  These changes included: (1) altering the finish and number of lite dividers in the windows, (2)

---

[17]  *Id.* at 18, 23.
[18]  *Id.*
[19]  The complaint does not specify who exactly approved Modular Steel's designs prior to production, instead stating only that it relied on "Fairfield's approval." Doc. 1 at ¶ 9. Fairfield does not deny that EYP may have contacted Modular Steel regarding its design plans. Doc. 6-1 at ¶ 10.
[20]  Doc. 1 at ¶ 9.
[21]  Doc. 1 at ¶ 8.
[22]  *Id.* at ¶¶ 10-11.

requesting additional linear feet of cabinets, and (3) requesting a change in the specification and size of interior doors.[23]

On July 18, 2019, Modular Steel sent an email to Five Star requesting payment for change orders No. 779 and No. 780.[24]  These two change orders reflect the three alterations that Modular Steel made to its design plans.[25]  In this email, Modular Steel stated that "all of the work provided was at your [Five Star's] specific instance and request at prices and quantities you agreed to and approved."[26]  Nevertheless, Modular Steel alleges that the changes made under these two orders were done "exclusively in reliance upon the direction and authority by Fairfield's architect."[27]

Modular Steel has not provided any formal change orders referring to these alterations as was required under the contract between Modular Steel and Five Star. Modular Steel has also not offered any specifics regarding its interactions with Fairfield.  While the complaint alleges that at "all relevant times, [Modular Steel] dealt with representatives of Fairfield," it neither offers the names of those representatives nor states at what times and under what circumstances Modular Steel engaged with them.  Similarly, despite asserting that a contractual

---

[23]  *Id.* at ¶ 10.
[24]  Doc. 6-1 at 29.
[25]  *Id.* at 26-27.
[26]  *Id.*
[27]  Doc. 1 at ¶ 14.

relationship exists between it and Fairfield,[28] Modular Steel has not provided information about the circumstances or context under which this contract was purportedly formed.[29]

### C.    Complaint

On May 5, 2020, Modular Steel filed its complaint against Fairfield.[30] Count I maintains that Fairfield breached its contract with Modular Steel by failing to pay the value of change orders No. 779 and No. 780.[31]  It also asserts that Fairfield breached its contract with Modular Steel by failing to pay retainage following completion of the project.[32]  In the alternative, Count II alleges that Fairfield would be unjustly enriched if it were not required to pay for the costs incurred by Modular Steel in relation to the two change orders and pay the amount of retainage.[33]  Under both Counts, Modular Steel demands a total of $705,039.55.[34]

---

[28]  *Id.* at ¶¶ 1, 4, 13.

[29]  Fairfield denies any contract exists between itself and Modular Steel.  Doc. 6 at ¶ 6.

[30]  Doc. 1.

[31]  *Id.* at at ¶¶ 12-18.

[32]  *Id.* at ¶¶ 12-18.

[33]  *Id.* at ¶¶ 19-25.

[34]  Modular Steel maintains that it is owed $542,684.00 for the two orders and $192,355.55 for retainage for a total of $705,039.55.  *Id.* at ¶¶ 18, 25.  For reasons that the Court cannot discern, the amount requested by Modular Steel is less than the sum of these individual amounts listed in the complaint.

## III.   APPLICABLE STANDARDS OF REVIEW

### A.   Dismissal Based on Lack of Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(2)

When reviewing a motion to dismiss under Rule 12(b)(2), a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."[35]  "Although plaintiffs bear the ultimate burden of proving personal jurisdiction by a preponderance of the evidence, such a showing is unnecessary at the preliminary stages of litigation."[36]  "Rather, [at the motion to dismiss stage] plaintiffs must merely allege sufficient facts to establish a prima facie case of jurisdiction over the person."[37]

To determine jurisdictional questions, the Court must "accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor."[38]  However, that said, "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction."[39]  Once that defense is raised, the plaintiff must sustain its burden by establishing jurisdictional facts through sworn affidavits, testimony or other qualified evidence.[40]  "A Rule

---

[35]  *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir.1992)).

[36]  *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009) (Conner, J); *see also Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992).

[37]  *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 556.

[38]  *Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 453 (D. Del. 2009).

[39]  *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990)

[40]  *See id.* at 603-04; *Time Share Vacation Club*, 735 F.2d at 67 n. 9.

12(b)(2) motion . . . is inherently a matter that requires resolution of factual issues outside the pleadings, [in order to determine] where *in personam* jurisdiction actually lies."[41]

### B.    Dismissal Based on Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted."  A motion to dismiss "tests the legal sufficiency of a pleading"[42] and "streamlines litigation by dispensing with needless discovery and factfinding."[43]  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[44]  This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[45]

Following the Roberts Court's "civil procedure revival,"[46] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[47] and *Ashcroft v. Iqbal*[48]

---

[41]   *Time Share Vacation Club*, 735 F.2d at 67 n. 9.
[42]   *Richardson v. Bledsoe*, 829 F.3d 273, 289 n. 13 (3d Cir. 2016) (Smith, C.J.) (citing *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).
[43]   *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989).
[44]   *Id.* at 326 (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).
[45]   *Id.* at 327.
[46]   Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313, 316, 319-20 (2012).
[47]   550 U.S. 544 (2007).
[48]   556 U.S. 662, 678 (2009).

tightened the standard that district courts must apply to 12(b)(6) motions.[49]  These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[50]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[51]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[52]  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[53]  Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[54]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[55]  No matter the context, however, "[w]here a complaint pleads facts that are 'merely

---

[49]  *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test.").

[50]  *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test.").

[51]  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[52]  *Id.*

[53]  *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[54]  *Twombly*, 550 U.S. at 556.

[55]  *Iqbal*, 556 U.S. at 679.

consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of entitlement to relief.'"[56]

When disposing of a motion to dismiss, the Court "accept[s] as true all

factual allegations in the complaint and draw[s] all inferences from the facts

alleged in the light most favorable to [the plaintiff]."[57]  However, "the tenet that a

court must accept as true all of the allegations contained in the complaint is

inapplicable to legal conclusions."[58]  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."[59]

## IV.   DISCUSSION

### A.   Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)

Rule 4(e) of the Federal Rules of Civil Procedure permits a district court to

assert personal jurisdiction over nonresidents to the extent allowed under the law

of the state where the court sits.[60]  Pennsylvania's long-arm statute authorizes this

Court to entertain jurisdiction over non-resident defendants, acting directly or by

an agent, upon "[c]ontracting to supply services or things in this

Commonwealth."[61]  Jurisdiction over such a person may be exercised "to the

fullest extent allowed under the Constitution of the United States and may be based

---

[56]  *Id.* at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[57]  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[58]  *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[59]  *Iqbal*, 556 U.S. at 678.

[60]  Fed. R. Civ. Pro. 4(e); *Time Share Vacation Club*, 735 F.2d at 63.

[61]  42 Pa. C.S.A. § 5322(a)(2).

on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."[62]  Consequently, the reach of this Court's personal jurisdiction under the Pennsylvania statute is coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[63]

### 1.      General Jurisdiction

As general personal jurisdiction confers the broadest scope, the first step in the inquiry is to determine whether a defendant's contacts with the forum state are sufficient to support that jurisdiction.[64]  A party subject to the general jurisdiction of a state can be called to answer any claim against him in that forum, regardless of whether the cause of action has any connection to the state.[65]  But general jurisdiction is only appropriate where an out-of-state defendant's "affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum state."[66]

It is clear that Fairfield is not "at home" in Pennsylvania.  Fairfield is organized under the laws of and located entirely in Connecticut.  It does not maintain offices in Pennsylvania, have employees in Pennsylvania, or own, lease, or use any real property in Pennsylvania.  Fairfield is not registered or licensed to do business in Pennsylvania, nor does it have a bank account in the state.  Further,

---

[62]  42 Pa. C.S.A. § 5322(b).
[63]  See *Time Share Vacation Club*, 735 F.2d at 63.
[64]  *Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).
[65]  *Id.*
[66]  *Goodyear Dunlop Tires Op., S.A. v. Brown*, 564 U.S. 915, 919 (2011).

while Fairfield does solicit prospective students from the state of Pennsylvania, that alone is insufficient to establish general jurisdiction.[67]  Fairfield is thus not subject to the general jurisdiction of this Court.

### 2.    Specific Jurisdiction

Absent general jurisdiction, a court may exercise jurisdiction only if specific personal jurisdiction exists.[68]  This inquiry focuses on the relationship between the defendant, the forum, and the present litigation.[69]  The plaintiff's claims must relate to or arise out of the defendant's contacts with the forum.[70]  Such contacts must be constitutionally sufficient so as to comport with the Due Process Clause of the Fourteenth Amendment and with "traditional notions of fair play and substantial justice."[71]  Contacts that are merely "random, isolated or fortuitous" are not sufficient to confer jurisdiction.[72]  "Jurisdiction is proper, however, where contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State."[73]

---

[67]   *See Isaacs v. Arizona Board of Regents*, 608 Fed. Appx. 70, 76 (3d Cir. 2015) (determining that merely soliciting prospective students who reside in Pennsylvania creates only *de minimis* contacts and is insufficient to establish general jurisdiction over an out-of-state university).

[68]   *Mellon Bank*, 960 F.2d at 1221.

[69]   *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

[70]   *Mellon Bank*, 960 F.2d at 1221.

[71]   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*citing Milliken v. Meyer*, 311 U.S. 457, 463 (1941)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985); *Pinker*, 292 F.3d at 368-69.

[72]   *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

[73]   *Burger King*, 471 U.S. at 475 (*citing McGee v. Int'l Life Ins. Co*., 355 U.S. 220, 223 (1957)).

The United States Court of Appeals for the Third Circuit applies a three-part test to determine whether specific personal jurisdiction exists.[74]  First, the defendant must have "purposefully directed its activities" at the forum state.[75] Unilateral action by the plaintiff is not sufficient.[76]  Second, the litigation must "arise out of or relate to" at least one of those activities.[77]  Third, if the first two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comports with notions of 'fair play and substantial justice.'"[78]

At the outset, it is important to note the similarity between this case and that decided by the Third Circuit in *Time Share Vacation Club v. Atlantic Resorts*.[79] There, the district court dismissed a Pennsylvania corporation's breach of contract action against out-of-state defendants for lack of personal jurisdiction.[80]  On appeal, the Third Circuit found it important to note that, where a plaintiff "places central importance" on the existence of a contract to establish jurisdiction, it would be well advised for that plaintiff to furnish that contract to the court.[81]  While perhaps not at the pleading stage, plaintiffs in these circumstances will ultimately "bear the burden of producing a copy of the entire contract, or at the least,

---

[74]   *O'Connor v. Sandy Lane Hotel Co., Ltd*., 496 F.3d 312, 317 (3d Cir. 2007).
[75]   *Id*. (*quoting Burger King*, 471 U.S. at 472).
[76]   *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 65 (1984).
[77]   *O'Connor*, 496 F.3d at 317 (*quoting Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-15 n. 9 (1984) (internal quotations omitted)).
[78]   *Id*. (*quoting Burger King*, 471 U.S. at 476).
[79]   735 F.2d.
[80]   *Id.* at 62-63.
[81]   *Id.* at 64.

proffering an explanation for its absence."[82]  Where, as here, the contract is alleged to be oral or implied, a plaintiff still bears the burden of alleging some facts that could demonstrate a contract exists.[83]  This is "particularly pertinent" where the plaintiff "has relied wholly upon the contract to establish minimum contacts of the defendants with Pennsylvania."[84]

The Third Circuit's admonition in *Time Share Vacation Club* is well-taken in the present case.  The thrust of Modular Steel's argument is that specific jurisdiction is appropriate because Modular Steel and Fairfield entered into a contract and that contract was almost entirely performed in Pennsylvania.[85]  But simply asserting that a contract exists in the pleadings, as Modular Steel has done, is not sufficient.  The single affidavit submitted by Modular Steel claims only that when Modular Steel was "engaged by Five Star and Fairfiled [sic], it was through phone calls and emails received at our office in Bloomsburg, Pennsylvania."[86]  No other details or evidence is offered to demonstrate that this created or affirmed a contract or to explain what the terms of this contract may or may not have been. And though this Court is required to treat the plaintiff's factual allegations as truth,

---

[82]   *Id.* at 65 (internal citations omitted).
[83]   *In re Chocolate Confectionary Antitrust Litig.*, 602 F. supp. 2d at 556.
[84]   *Time Share Vacation Club*, 735 F.2d at 65.
[85]   Doc. 13 at 6.
[86]   Doc. 12-1 at ¶ 3.

- 14 -

it is not required to accept that Fairfield formed a valid contract with Modular Steel as a matter of law.[87]

Even accepting as true that Fairfield spoke with Modular Steel via telephone call and email, Modular Steel has not met its burden of establishing a prima facie case for jurisdiction.  The inquiry of specific jurisdiction is pointed not towards the actions of the plaintiff, but the action of the *defendants*.  Beyond asserting that a contract exists, Modular Steel claims that personal jurisdiction is appropriate because the work completed by Modular Steel under this alleged contract occurred primarily in Pennsylvania.  But specific jurisdiction requires that the *defendant* have purposefully availed itself of the laws and benefits of the state of Pennsylvania.

Besides non-specific "phone calls and emails," Modular Steel can point only to the directions allegedly given by EYP to Modular Steel to effectuate the three changes to its design.  Modular Steel does not state whether EYP interacted with Modular Steel in person or remotely or whether there were any written documents exchanged between the two.  Nor does it offer any other evidence that Fairfield purposefully availed itself of the laws and benefits of Pennsylvania.  That Modular

---

[87] *Delaware River Preservation Co., Inc v. Miskin*, 923 A.2d 1177, 1182 (Pa. Super. 2007). Where the facts are not in dispute, the question of contract formation is a matter of law. *Ecore International, Inc. v. Downey*, 343 F. Supp. 3d 459, 487-88 (E.D. Pa. 2018) (internal citations omitted).  The facts are not in dispute in this case because Fairfield does not deny that either Fairfield or someone who Modular Steel believed to be a representative of Fairfield spoke with Modular Steel, either by phone or email.

Steel constructed modular units to be used in a project in Connecticut is simply not enough to establish specific jurisdiction.  Modular Steel has failed to meet its burden and this action is thus dismissed.

### B.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim.  Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[88]

### 1.    Facts Alleged in the Complaint

The facts alleged in the complaint, which this Court must accept as true for the purposes of this motion, are as follows.  Fairfield entered into a contract with Consigli to construct a new student housing project for the university.[89]  To this end, Consigli entered into a subcontracting agreement with Five Star, who in turn entered into a subcontracting agreement with Modular Steel.[90]  Pursuant to its contract with Five Star, Modular Steel agreed to "create, engineer and formulate plans" to construct ninety-six modular units that would be used for Fairfield's

---

[88]   *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).
[89]   Doc. 1 at ¶ 7.
[90]   *Id.*

housing project.[91]  Modular Steel's designs were to be "specifically approved by Fairfield's architect."[92]

During performance, Modular Steel "dealt with representatives of Fairfield," including the architect specified in Modular Steel's contract.[93]  At one point, Modular Steel prepared a set of drawings that Fairfield used to obtain approvals and permits for the housing project.[94]  Following Fairfield's approval of Modular Steel's designs, Modular Steel began constructing the modular units.[95]  During this process, the architect working for Fairfield (EYP) inspected Modular Steel's work and directed Modular Steel to make three changes to its design.[96]  Modular Steel made these changes, relying on the "architect's authority" to direct alterations to Modular Steel's designs as "Fairfield's designated representative for this project."[97]

Under Pennsylvania law, whether a contract has been formed is generally a question of law and is thus reserved for the court to determine.[98]  As a result, Modular Steel's assertion that it has entered into a valid contract with Fairfield is

---

[91]   *Id.*
[92]   *Id.*
[93]   *Id.* at ¶ 8.
[94]   *Id.*
[95]   *Id.* at ¶ 9.
[96]   *Id.* at ¶ 10.
[97]   *Id.* at ¶ 11.
[98]   *Delaware River Preservation Co., Inc v. Miskin*, 923 A.2d 1177, 1182 (Pa. Super. 2007). Where the facts are not in dispute, the question of contract formation is a matter of law.  *Ecore International, Inc. v. Downey*, 343 F. Supp. 3d 459, 487-88 (E.D. Pa. 2018) (internal citations omitted).

not entitled to an assumption of truth.[99]  All other factual allegations in the

complaint will be presumed true.

### 2.      Breach of Contract

To succeed on a breach of contract claim under Pennsylvania law, a plaintiff

must establish three elements: "(1) the existence of a contract, including its

essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant

damages."[100]  A contract may be formed orally, in writing, or "as an inference from

the acts and conduct of the parties."[101]  But "[i]t is black letter law that in order to

form an enforceable contract, there must be an offer, acceptance, consideration, or

mutual meeting of the minds."[102]

The complaint does not allege facts that could establish the existence of a

valid contract between Modular Steel and Fairfield.  Simply asserting the existence

of a contractual relationship, as Modular Steel has done, is not enough.  One

satisfies this requirement by pleading facts that, when taken together, could legally

establish the formation or existence of a contract.

Modular Steel has fundamentally failed to do this.  Beyond asserting that a

contractual relationship exists between Modular Steel and Fairfield, the complaint

---

[99]   Doc. 1 at ¶¶ 1, 4, 13.

[100]  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999)).

[101]  *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

[102]  *McIlwain v. Saber Healthcare Group, Inc., LLC*, 208 A.3d 478, 485 (Pa. Super. 2019) (quoting *Walton v. Johnson*, 66 A.3d 782, 786 n. 3 (Pa. Super. 2013)).

does not offer any specific information demonstrating that a contract exists that would make Fairfield liable for either the cost of the change orders or retainage. The complaint does not state when the alleged contract was entered into, which parties agreed to be bound by it, or offer any of the terms purportedly included in the contract.  The only formal contract that the complaint refers to is that between Modular Steel and Five Star to create plans for and construct the modular units "specifically approved by Fairfield's architect."[103]

Moreover, the fact that EYP directed Modular Steel to make changes does not by itself demonstrate the formation or existence of a contract.  The complaint alleges neither that the directions from EYP arose separately from Modular Steel's contract with Five Star nor that EYP attempted to enter into a contract with Modular Steel on Fairfield's behalf.  That Modular Steel followed EYP's directives implies that Modular Steel owed a contractual duty to make design changes to *some* party.  But it alone will not establish that this duty arose pursuant to an existing contract with Fairfield.

Finally, that Modular Steel "dealt with representatives of Fairfield" or that its drawings of the modular units were used to obtain approvals and permits from the City of Fairfield will not save the complaint.  Modular Steel's statement is too vague to support its contention that Modular Steel and Fairfield had a contract.  At

---

[103] Doc. 1 at ¶ 7.  There is also no mention within the complaint of an indemnification clause or other provision that would make Fairfield liable on Modular Steel's contract with Five Star.

most, it suggests that the two parties had some type of contact; whether that involved entering into a contract is absent from the complaint.  Further, using designs to obtain approvals and permits does not establish a contractual relationship.  Again, while that might help establish *some* relationship between Modular Steel and Fairfield, nothing else in the complaint suggests that the relationship is a contractual one.

Modular Steel's complaint fails to establish facts that could show a contract existed between the parties.  Because there can be no breach of contract claim without a valid contract, Modular Steel has failed to plead facts that could give rise to a facially plausible breach of contract claim.  Count I of Modular Steel's complaint is thus dismissed.

### 3.   Unjust Enrichment

To succeed on an unjust enrichment claim, a plaintiff must show: "(1) the plaintiff conferred a benefit on the defendant, (2) the defendant appreciated the benefit, and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit."[104]  The most important factor in this analysis is "whether the enrichment of the defendant is unjust; the doctrine does

---

[104]  *Alpha Pro Tech, Inc. v. VWR Intern. LLC Global Ground Support, LLC v. Glazer Enterprises, Inc.*, 581 F. Supp. 2d 669, 675 (E.D. Pa. 2008).

not apply simply because the defendant may have benefited as a result of the actions of the plaintiff."[105]

Under Pennsylvania law, an unjust enrichment action will only stand where the claiming party had a "reasonable expectation of being paid by the party benefited."[106]  Additionally, "a third party ([Fairfield]) that benefits from a contract between two other parties ([Modular Steel and Five Star]) is not unjustly enriched unless the third party requested the benefit or misled the plaintiff into performing the contract."[107]

Modular Steel's unjust enrichment claim fails for two reasons.  First, the complaint does not state facts that suggest or imply that Modular Steel had a reasonable expectation of being paid by Fairfield.  Modular Steel alleges only that it had a contract with Five Star to construct the modular units subject to the supervision of Fairfield's architect; it does not allege that Fairfield promised to pay Modular Steel for executing the Change Orders or that the architect made such a promise on Fairfield's behalf.

---

[105] *iRecycleNow.com v. Starr Indemnity & Liability Company*, 674 Fed. Appx. 161, 162-63 (3d Cir. 2017) (quoting *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010)).

[106] *Aloe Coal Co. v. Department of Transportation*, 643 A.2d 757, 767-68 (Pa. Commw. Ct. 1994) (internal citations omitted); *see Allegheny General Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000) (holding that parties must have a "reasonable expectation of payment" to state a viable claim for unjust enrichment).

[107] *Starr Indemnity*, 674 Fed. Appx. at 163 (internal citations omitted); *Meehan v. Cheltenham Township*, 410 Pa. 446, 451 (1963); *Limbach Co., LLC v. City of Philadelphia*, 905 A.2d 567, 577 (Pa. Commw. Ct. 2006).

Second, the complaint does not plausibly establish that Fairfield has misled or requested the benefit provided by Modular Steel.  Nothing in the complaint suggests that Fairfield has misled Modular Steel.  And, as the complaint concedes, it was *Five Star* that solicited Modular Steel, not Fairfield.  By the complaint's own terms, approval by the architect was an explicit provision in Modular Steel's contract with Five Star; Modular Steel would thus not be providing a "benefit" to Fairfield by making changes that it was already legally obligated to make.[108]  Because the complaint fails to show that, under these facts, Modular Steel has a plausible unjust enrichment claim against Fairfield, Count II of the complaint is dismissed.[109]

---

[108]  *See* Restatement of Restitution § 1 (defining "benefit" as "any form of advantage"); *see also Sack v. Feinman*, 495 Pa. 100, 105 (1981) (citing section one of the Restatement of Restitution for elements of an unjust enrichment claim).  Because Modular Steel has alleged that supervision by EYP was part of its contract with Five Star, adjustments made by EYP would not constitute an advantage as they were already authorized by Modular Steel's contract with Five Star.

[109]  The plaintiff is also advised that it has misstated the benefit that it might allegedly recover under an unjust enrichment theory.  Recovery under an unjust enrichment claim is measured by the benefit conferred to the defendant, not the loss incurred by the plaintiff.  *D.A. Hill Co. v. Clevetrust Realty Investors*, 573 A.2d 1005, 1009 (Pa. 1990).  While the complaint demands recovery for the cost of making the changes specified by the architect, as well as for retainage held in the project, these constitute the *losses* of Modular Steel rather than the *benefits* given to Fairfield.

## V.    CONCLUSION

The Defendant's motion to dismiss is granted.

An appropriate Order follows.

BY THE COURT:


<u>*s/ Matthew W. Brann*</u>
Matthew W. Brann
United States District Judge